# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JEANA F. PYLANT,** | ) |
| **PLAINTIFF,** | ) |
| **VS.** | )   5:07-cv-2063-JHH |
| **MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,** | ) ) ) |
| **DEFENDANT.** | |

## MEMORANDUM OF DECISION

Plaintiff Jeana F. Pylant brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act.[1]  For the reasons outlined below, the court finds that the decision of the Commissioner is due

---

[1] In general, the legal standards are the same regardless of whether a claimant seeks disability insurance benefits (DIB) or supplemental security income (SSI).  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.  See Borden v. Astrue, 494 F. Supp.2d 1278, 1280 n.1 (N.D. Ala. 2007).

to be affirmed.

## I. PROCEEDINGS BELOW

Plaintiff filed applications for disability insurance benefits and supplemental security income (SSI) on April 20, 2005. (Supplemental Transcript 17.)[2] Plaintiff alleged a disability onset date of October 4, 2004 due to bipolar disorder with rapid cycling and reading, learning, mathematics, and written expression disorders. (Tr. 11-128, 119-43, 162-98.) The application was denied initially on September 12, 2005. (Tr. 36.) Plaintiff then timely requested and received a hearing before an Administrative Law Judge. The hearing was held on October 30, 2006 in Decatur, Alabama. (Tr. 199.) Both the plaintiff and vocational expert Patsy Bramlett testified at the hearing. (Tr. 200.) Also present with Plaintiff at the hearing was a non-attorney representative. (Tr. 199, 201; Supp. Tr. 17.)

In the November 27, 2006 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act and was thus ineligible for disability insurance benefits and supplemental security income. (Supp. Tr. 14.) Thereafter, on September 11, 2007, by and through present counsel, plaintiff

---

[2] Upon receipt of the oral transcript, counsel for plaintiff discovered that neither Plaintiff nor counsel for plaintiff had received a readable copy of the ALJ decision. Counsel for plaintiff thereafter requested from the Appeals Counsel a readable copy of that decision. (See Doc. # 12 at 3.) That supplemental transcript is referred to herein as such.

2

requested review of the ALJ decision by the Appeals Counsel. (Tr. 4-6.) After the Appeals Council denied plaintiff's request for review, that decision became the final decision of the Commissioner, and a proper subject of this court's appellate review.

At the time of the hearing in question, plaintiff was 29 years old. She attended school to the ninth grade (achieved through special education classes) and has work experience as a certified nurse assistant (CNA), sewing machine operator, and fast food cook. (Tr. 73-81, 89, 203-07.) The job as a CNA was classified by the vocational expert as medium, semi-skilled, and the other jobs were classified as light, unskilled work. (Tr. 224.) According to plaintiff, she has been unable to engage in substantial gainful activity since October 4, 2004, primarily due to bipolar affective disorder with rapid cycling and reading, learning, mathematics, and written expression disorders. (Tr. 112-18, 119-43, 162-98.)

Pylant testified that she worked in 2004 as a CNA, but quit because of anxiety and depression. (Tr. 205.) Similar symptoms of mood swings, nervousness, and being uncomfortable around people led her to quit her job at a sewing plant. (Tr. 206.) Pylant further testified that she did not feel she could perform her past job of fast food cook because she is not fast enough anymore, and that she could not perform a security job because her mind wanders. (Tr. 207-08.) "I don't have my mind like I used to. I have these spells that where sometimes all I want to do is cry

or I'm, or my mind's racing so fast I can't keep up with what I'm doing." (Tr. 208.)

Pylant testified that she stays home most of the time and does not have friends or hobbies anymore. (Tr. 214, 218.) She testified that she can not focus on a task, including a television show, for more than 15 minutes and she forgets things all of the time. (Tr. 218, 220.) She says that she experiences highs and lows in her behavior, from depression to hyperactivity, and often thinks about suicide. (Tr. 216-17, 219.) She takes medication for her mental health issues. (Tr. 215-16.)

## II. THE DECISION OF THE ALJ

Determination of disability under the Social Security Act requires a five-step analysis. See 20 C.F.R. § 404.1 et. seq. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final

determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a prima facie case by demonstrating that [s]he can no longer perform h[er] former employment." Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." Id.

Here, the ALJ determined that Pylant had the following severe impairments: bipolar disorder, reading disorder, learning disorder (spelling), mathematics disorder, and a disorder of written expression. (Supp. Tr. 19.) However, the ALJ also determined that these severe impairments, whether considered alone or in combination, failed to meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (Tr. 120.) According to the ALJ, Pylant's

subjective complaints concerning her impairments and their impact on her ability to work were not fully credible due to the degree of inconsistency with the medical evidence established in the record. (Tr. 21-22.)

Relying on the testimony of the VE, the ALJ found that Pylant could perform her past relevant unskilled work as a sewing machine operator or cook, as neither of those jobs require more than casual contact with the public and can be performed by someone able to understand simple instructions. (Tr. 22.) In making his findings, the ALJ noted that Pylant was able to sustain harmonious relationships with her husband and various family members, thus "showing the ability to get along with others to some degree." (Supp. Tr. 20.) The ALJ also stated in his findings that he gave substantial weight to the opinions of the DDS consultant and Dr. Jon Rogers as "consistent with the evidence of record," concluding that Pylant was not under a disability at any time through the date of the decision. (Supp. Tr. 22.)

### III.  STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Sections 405(g) and 1383(c) mandate that the

Commissioner's findings are conclusive if supported by "substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence.  Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  "It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Martin, 894 F.2d at 1529 (quoting Bloodsworth, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance."  Lamb, 847 F.2d at 701.

### IV.  ANALYSIS

The plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council,

7

reversed, or in the alternative, remanded for further consideration.  Plaintiff argues that the ALJ's conclusion that she suffered no more than mild to moderate levels of impairment in the skills required in a work setting was contrary to the substantive medical evidence of record.  (See Doc. # 12 at 7-11.)  Specifically, Pylant contends that the ALJ improperly found her IQ testing to be the most relevant portion of the record but "Plaintiff does not now nor has she ever suggested that her disability is based on her intellectual functioning."  (Doc. # 12 at 7.)  Rather, Pylant believes that the evaluation of Dr. Rogers, when considered in conjunction with the mental health treatment records which indicate some disabling depression levels and some varied and at times significant medication side effects, "should have prompted the ALJ to conclude that she suffered more than a mild to moderate degree of impairment in restriction of activities of daily living and concentration, persistence and pace." (Doc. # 12 at 8.)  That is, Pylant contends that substantial medical evidence supports a finding that her chronic mental impairment prevents her from gainful employment.[3]  (Doc. # 12 at 9.)

---

[3] Pylant cites Social Security Ruling ("SSR") 83-15 for the contention that the ALJ did not consider the substantial evidence of record under which "it is noted that the evaluation of chronic mental impairments should lead the adjudicator to consider the long-range picture rather than utilizing single current examinations to describe an individual sustained ability to function." (Doc. # 12 at 9.)  Social Security Rulings are binding on all components of the Social Security Administration.  20 C.F.R. § 402.35(b)(1).  But the SSR cited by plaintiff in support of her argument has been rescinded without replacement.  See SSR 83-15, 1983 WL 31245 (Nov. 30, 1982).

Here, the ALJ articulated an evaluation of Pylant's mental impairments, including those of depression and medication side effects, consistent with 20 C.F.R. § 404.1520. (Supp. Tr. 19-21.) He determined that Pylant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 because the claimant: "has no problems caring for her personal needs; get[s] along with her husband in a harmonious fashion; has a relationship with other family members as well; [has] the ability to get along with others to some degree; has a valid driver's license and drives on occasion; watches television and listens to the radio; is sometimes able to remember what she sees or hears; has no evidence that her mental impairment has ever resulted in any episodes of deterioration or decompensation, of extended duration." (Supp. Tr. 20.) Although some difficulty with concentration and attention was noted, as well as Pylant's requirement of accommodations in the academic area of employment, the ALJ concluded that Pylant's condition improved with medication and that she retained the capacity to perform her past relevant work. (Supp. Tr. 21-22.)

In making those determinations, the ALJ considered the medical evidence as a whole, (see Supp. Tr. 20), giving significant weight to the opinion of the DDS consultant and the opinion of Dr. Rogers. (Supp. Tr. 22.) Dr. Rogers found Pylant

9

capable of being cooperative with peers and supervision and maintaining a routine work cycle in a well-structured, supervised work situation. (Tr. 114.) The doctor did remark that Pylant's response to frustration would be poor and that her communication skills, physical and mental stamina were below average. (Tr. 114.) But those limitations led the ALJ to conclude that any work activity for Pylant should involve "only casual contact with the general public" and "only non-confrontational criticism from supervisors." (Supp. Tr. 22.)  Such finding was consistent with the state agency psychiatrist finding that Pylant's mental impairment resulted in mild to moderate functional limitations. (Tr. 144-60.) It was also consistent with additional treatment records (see Tr. 162-198) covering the period from August 2005 to September 2006, showing that Pylant's symptoms fluctuated but remained diminished as long as she was taking an appropriate combination of medications.[4] (Tr. 120, 163,

---

[4] The following notes are contained in some of the most recent entries of Pylant's medical records:

- Ms. Pylant has already seen some benefit from Lamictal. She definitely believes it is having some antidepressant effect. (Tr. 120.)
- Ms. Pylant is doing well. She has not experienced any recent depressive or manic spectrum symptoms. (Tr. 167.)
- Ms. Pylant is doing better. (Tr. 172.)
- Since I last saw Ms. Pylant she came to the conclusion that she had actually been doing better on Abilify and was re-initiated on 12/20/05. Since that time she reports her mood has improved tremendously. She is tolerating the medications without any side effects. (Tr. 182.)
- Client stated feels better today with med[ication] change to evening. (Tr. 188.)
- Ms. Pylant reports that she felt much better after Abilify was added. Unfortunately, she ran out of samples two weeks ago. Since being off the

167-68, 170, 172, 178-79, 182, 187-88, 190-94.) Thus, the ALJ had substantial evidence to support his decision, and this court cannot re-weigh the evidence. Dyer, 395 F.3d at 1210; Phillips, 357 F.3d at1240 n. 8.

## VI. CONCLUSION

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the \_\_\_4th\_\_\_ day of March, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

medication she reports some mixed symptoms although not to the degree that she had one month ago. She is optimistic that she will improve if we are able to procure samples for her on a regular basis. She has signed up for patient assistance. (Tr. 192.)

11